UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALESIA GREGSON, o/b/o X.J., a minor child, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, Commissioner )<br>of Social Security Administration, )<br>)<br>Defendant. )<br>_____ ) | CASE NO. C05-0196-RSM<br><br>REPORT AND RECOMMENDATION<br>RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Alesia Gregson, on behalf of her son X.J., a minor, proceeds through counsel in the appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Child's Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act after a hearing before an Administrative Law Judge (ALJ). For the reasons set forth below, it is recommended that the final decision of the Commissioner be affirmed.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 2002;[1] he was eighteen months old at the time of the hearing before the ALJ. (A.R. 21). On November 5, 2002, Ms. Gregson protectively filed an application for Child's SSI benefits on behalf of her minor son, alleging a disability onset date of May 28, 2002. Plaintiff's application was denied initially and on reconsideration, and plaintiff timely requested a hearing.

ALJ Thomas S. Robinson held a hearing on January 6, 2004, and heard testimony from Ms. Gregson, and medical expert Robert E. Hunter, M.D. (A.R. 301-30). On May 3, 2004, the ALJ issued a written decision denying plaintiff's application for SSI benefits. (A.R. 21-28).

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (A.R. 5-8). Plaintiff appealed this final decision of the Commissioner to this Court.

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). Substantial evidence is defined as more than a scintilla but less than a

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01 preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to
02 support a conclusion. *Smolen,* 80 F.3d at 1279. The ALJ is responsible for determining
03 credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v.*
04 *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one
05 rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v.*
06 *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

07 If the court determines that the ALJ erred, the court has discretion to remand for further
08 proceedings or to award benefits. *See Marcia v. Sullivan* , 900 F.2d 172, 176 (9th Cir. 1990).
09 The court may direct an award of benefits where "the record has been fully developed and further
10 administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d
11 1072, 1076 (9th Cir. 2002).

12 Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
   reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
13 must be resolved before a determination of disability can be made; and (3) it is clear
   from the record that the ALJ would be required to find the claimant disabled if he
14 considered the claimant's evidence.

15 *Id*. at 1076-77.

16 ## IV.  EVALUATING CHILD DISABILITY

17 Disability in an individual under eighteen years of age is defined as "a medically
18 determinable physical or mental impairment, which results in marked and severe functional
19 limitations, and which can be expected to result in death or which has lasted or can be expected
20 to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The
21 claimant bears the burden of proving he is disabled within the meaning of the Social Security Act.
22 *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01     The social security regulations set forth a three-step sequential evaluation process for
02 determining whether a claimant is disabled.  20 C.F.R. § 416.924.  At step one, it must be
03 determined whether the claimant is performing substantial gainful activity.[2]  *Id.*  If the claimant is
04 not performing substantial gainful activity, at step two, it must be determined whether the claimant
05 has a "severe" medically determinable impairment or combination thereof.  *Id.*  If the claimant has
06 a severe impairment or combination of impairments that meets the duration requirement, it must
07 be determined at step three whether that impairment meets, medically equals, or functionally
08 equals a listed impairment in 20 C.F.R. § 404, Part B, Appendix 1, Subpart P.  *Id.*

09     At step three, if an impairment meets or medically equals a listed impairment, then the
10 claimant will be found disabled.  If the impairment does not meet or medically equal a listed
11 impairment, it must be determined whether the impairment *functionally* equals a listed impairment
12 by assessing the plaintiff's limitations in six broad areas of functioning called "domains."  The
13 domains for older infants and toddlers (age 1 to attainment of age 3) include the following: (1)
14 acquiring and using information, (2) attending and completing tasks, (3) interacting and relating
15 with others, (4) moving about and manipulating objects, (5) caring for oneself, (6) health and
16 physical well-being.  20 C.F.R. § 416.926a.  The claimant's impairment will be considered
17 functionally equivalent if the claimant has "marked" limitation in two domains, or "extreme"
18 limitation in one domain.  *Id.*  A determination of functional equivalence is the responsibility of the
19 state agency medical or psychological staff at the initial and reconsideration levels, of an ALJ at
20

---

21     [2] School attendance is not considered substantial gainful activity.  20 C.F.R. § 416.972.
22 For most children, gainful employment is irrelevant because children do not support themselves.
Arthur Balsam & Albert Zabin, *Disability Handbook: 2004 Cumulative Supplement* 223 (2004).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 the hearing level, and of the Appeal Council at that level. 20 C.F.R. § 416.926a(n).

02 If a claimant survives all three steps and has an impairment that meets, medically equals, 03 or functionally equals a listed impairment for the required duration, he or she will be found 04 disabled for purposes of SSI. The Commissioner must review a minor's eligibility at least every 05 three years if the impairment(s) is likely to improve with age. 42 U.S.C. § 1382c(a)(3)(H)(ii)(I) 06 (2004).

## V. THE ALJ's DECISION

On May 3, 2004, the ALJ issued a decision denying plaintiff's request for benefits. (A.R. 21-28). At step one, the ALJ determined that plaintiff has never engaged in substantial gainful activity. At step two, the ALJ found that plaintiff has seizures, gastric reflux, and allergies which constitute severe impairments. At step three, however, the ALJ found that plaintiff's impairments do not meet, medically equal, or functionally equal the severity of any listed impairment. Based on these findings, the ALJ concluded that plaintiff was not disabled. (A.R. 27).

## VI. DISCUSSION

### A. The ALJ Properly Considered the Medical Opinion of Treating Physician, Dr. Diana Tattoni.

Plaintiff argues that the ALJ erred by failing to give proper weight to the opinions of his treating pediatrician, Diana S. Tattoni, M.D. (Dkt. #17 at 10-12). Plaintiff points out that Dr. Tattoni has treated plaintiff since he was one month old and is well acquainted with his limitations. (Dkt. #17 at 11). The Commissioner responds that the ALJ properly rejected Dr. Tattoni's opinions because they were offered on a check-the-box form and were not supported by explanation or medical records. (Dkt. #20 at 6-9).

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Id.* at 761-62, n.7. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ must defer to a treating physician's opinion, even if controverted by other medical opinions, unless the ALJ provides "specific and legitimate" reasons based on substantial evidence in the record. *Magallanes*, 881 F.2d at 751; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings.'" *Magallanes,* 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). An ALJ may, however, reject medical opinions based upon check-the-box type reports that lack a narrative explanation for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). The Court's main concern in connection with this inquiry centers around the search for specific justifications and rationale for a conclusion, as opposed to conclusory statements or a mere reiteration of a claimant's subjective complaints. *Id.* Courts are not obligated to accept any treating physician's opinion that is brief and conclusory in form and that offers few clinical findings to support its conclusions.

*Magallanes*, 881 F.2d at 751.

In this case, plaintiff's arguments rely heavily on the opinion of Dr. Tattoni, plaintiff's treating pediatrician, who in filling out a Social Security Medical Report for Child form, checked off boxes indicating that plaintiff had marked impairment in each of the six domains. (A.R. 289-91). Although the report calls for explanations of the examining physician's conclusions, no such explanations appear.

The ALJ justified his decision to discount Dr. Tattoni's report, noting that it was offered on a check-the-box form, and was unsupported by evidence or analysis. (A.R. 26). Although the administrative record includes medical records from Dr. Tattoni, the ALJ found that Dr. Tattoni's records do not support her conclusions as to plaintiff's level of impairment. (A.R. 238-57).

The ALJ also found Dr. Tattoni's report inconsistent with other substantial medical evidence in the record indicating that plaintiff's seizures, gastric reflux, and allergies were improved or moderate, and produced less than marked limitations in his ability to function. (A.R. 307-08, 314, 319-22). Dr. Hunter, the medical expert, reviewed plaintiff's complete medical records and opined that plaintiff had no limitation in the first five domains, and had less than marked limitation in the sixth domain, health and physical well-being. (A.R. 26, 325). It is appropriate for an ALJ to rely on the opinions of expert physicians who are also experts in social security disability evaluation. 20 C.F.R. § 416.927(f)(2)(i). As the ALJ noted, Dr. Hunter's findings are "well-supported in the record and persuasive." (A.R. 26).

The record indicates that plaintiff has food and environmental allergies, but they are controlled with medication and food avoidance. (A.R. 281-87). There has been only one recorded instance of a skin reaction after eating oatmeal. (A.R. 320). Plaintiff's gastric reflux is

01 also largely controlled with medication and has shown a pattern of gradual improvement. (A.R.
02 319). Dr. Hunter notes that a child with severe gastric reflux would experience problems of
03 inadequate nutrition, poor growth performance, and other respiratory difficulties. *Id.* Dr. Hunter
04 testified that plaintiff has no such difficulties. *Id.* Although plaintiff reportedly suffers from
05 episodes described as seizures, repeat electroencephalograms ("EEG") at Children's Hospital were
06 normal and plaintiff was not treated with any anti-seizure medication. (A.R. 144, 195-96).
07 Neurologist Dr. Russell P. Saneto reported that plaintiff's neurological examinations were normal
08 and that plaintiff's history of body jerking is related to his gastroesophageal reflux disease, not
09 seizures. (A.R. 195, 198, "episodes of postprandial jerking have to do with his gastroesophageal
10 reflux disease. The abnormal movements upon going to sleep are likely sleep onset myoclonus
11 and of likely no seizure or abnormal EEG correlation."). A CT scan of the brain was also
12 negative. (A.R. 171). In addition, plaintiff underwent a metabolic workup that was negative and
13 again plaintiff was not placed on any medication. (A.R. 200, 277-78, 297).

14       The testimony of plaintiff's mother further supports the ALJ's conclusion. Plaintiff's
15 mother testified that his seizures, gastric reflux, and allergies had improved, and that he is growing
16 and developing normally. (A.R. 307-08, 313-14). Although, Ms. Gregson testified that plaintiff
17 is "slower than her other children in acquiring and using information," Dr. Hunter testified that
18 plaintiff is within the normal range. (A.R. 324-25). Likewise, as the ALJ noted, Exhibits 13F and
19 14F submitted by plaintiff after the hearing show only normal or mildly abnormal laboratory results
20 (A.R. 275-80), and indicate that plaintiff's gastric reflux condition has been improving (A.R. 281-
21 87). (A.R. 26).

22       It is well settled that a treating physician's opinion concerning a patient's condition is

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

entitled to controlling weight if it is well supported by medical findings and is not inconsistent with other substantial evidence in the record. *See, e.g., Magallanes,* 881 F.2d at 751. Because Dr. Tattoni's opinions were offered on a check-the-box form, were unsupported by objective findings, and were inconsistent with other medical evidence, the ALJ's decision not to fully credit Dr. Tattoni's report was not erroneous.

   B. <u>The ALJ Properly Determined that the Combination of Plaintiff's Impairments do Not Functionally Equal a Listed Impairment</u>.

  Plaintiff next asserts that the ALJ improperly determined that plaintiff's combination of impairments do not functionally equal a listed impairment. Plaintiff asserts that he has marked limitations in the following four domains: "attending and completing tasks," "interacting and relating with others," "caring for yourself," and "health and physical well being." (Dkt. #17 at 12-19). The Commissioner argues that substantial evidence supports the ALJ's findings in these four functional domains. (Dkt. #20 at 5).

   1. <u>Attending and Completing Tasks</u>

  When analyzing the domain of attending and completing tasks, the Commissioner considers how well the plaintiff is able to focus and maintain his attention, and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). Children in plaintiff's age group (age 1 to attainment of age 3) should be able to attend to things that interest them and have adequate attention to complete some tasks by themselves. 20 C.F.R. § 416.926a(h)(2)(ii). As a toddler, plaintiff should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on his clothes. *Id*. Relying on the

testimony of medical expert Dr. Hunter, the ALJ found no evidence that plaintiff's impairments, *i.e.*, allergies, gastric reflux, and seizures, alone or in combination cause any limitations in the domain of attending and completing tasks. (A.R. at 26, 323-25). Plaintiff's mother also testified at the hearing that plaintiff did not have any "motor skill limitations or cognitive limitations, mental limitations." (A.R. 313).

After the ALJ issued his decision, plaintiff submitted new evidence to the Appeals Council, consisting of a physical therapy evaluation conducted on September 14, 2004, by physical therapist Vicki Schwartz at Cascade Children's Therapy; an autism evaluation conducted on September 30, 2004, by Gary A. Stobbe, M.D., at Autism Spectrum Treatment and Research; and an evaluation for an Infant Toddler Early Intervention Program conducted on May 3, 2005, by Classroom Teacher Jane Shumway at Wonderland Developmental Center. (A.R. 8, 13-15). The Appeals Council stated that it considered the additional evidence and found that the information does not provide a basis for changing the ALJ's decision. (A.R. 6). Evidence submitted for the first time before the Appeals Council should be considered by the district court because the Appeals Council's denial of the request for review is part of the "final decision." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993)(finding that although the Appeals Council declined to review the ALJ's decision, it reached its decision after considering the case on the merits, examining the entire record, including the new evidence, and concluding that the ALJ's decision was proper and that the new evidence failed to provide a basis for changing for the ALJ's decision).

Plaintiff argues that he is marked in the domain of attending and completing tasks because the physical therapy evaluation performed by physical therapist Vicki Schwartz showed that he tested "two standard deviations below the mean in areas of Low registration, Sensory sensitivity,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

Sensation avoiding, and Low threshold." (Dkt. # 17 at 15; A.R. 292-94). The evaluation states that "based on mom's report/interpretation, plaintiff presents with definite differences (corresponds to scores 2 standard deviations below the mean, which represent over responsiveness when compared to peers) in all areas except one." (A.R. at 293). Ms. Schwartz personally observed, however, that plaintiff "was seen in a variety of play situations. He tolerated 1½ hours of evaluation time and was cooperative and involved with activities presented." *Id.* Ms. Schwartz concluded that the tests results showed plaintiff's gross and fine motor scores to be within "normal limits," and found no sensory abnormalities during the session. (A.R. at 294). Since sensory abnormalities were not evident in the session, Ms. Schwartz recommended a short term trial of physical/occupational therapy to further assess plaintiff's sensory processes. *Id.*

Plaintiff also argues that he was evaluated for possible autism in September 2004 by Gary A. Stobbe, M.D. However, Dr. Stobbe concluded that the diagnosis of autism was not supported by the examination. (A.R. at 297-300). Dr. Stobbe's physical examination showed that plaintiff has no difficulty focusing and maintaining attention. Dr. Stobbe reported,

> [Plaintiff] makes excellent eye contact throughout the evaluation. He brings objects to me for interaction and shows appropriate smile interaction to my reaction. Joint attention is easy to establish with objects. He shows some interest in stuffed animals, although his play tends to be very primitive with a variety of non-toy items which he will pick them up, bring them to me or his mother also picking up and dumping Legos and other pieces. He does some aggressive type behaviors such as slamming drawers, usually he will look for reaction from me and his mother when he does this behavior. He is fairly easy to redirect. He on one occasion was frustrated and was trying to leave the clinic and started to display tantrum behavior, however, this was again easy to extinguish and redirect. He was frequently babbling in the office, although with appropriate intonation, however, there were no intelligible words except for "bye-bye." No motor stimming behaviors seen or other unusual behaviors.

(A.R. at 299). Dr. Stobbe found that "[plaintiff] has some behaviors at home that are autistic in

description; however, current examination does not support this diagnosis as his eye contact, joint attention, and seeking out social interaction is all quite good." (A.R. at 299).

A review of the new medical evidence and the ALJ's decision refutes plaintiff's claim. Contrary to plaintiff's contention, Ms. Schwartz's physical therapy evaluation and Dr. Stobbe's autism evaluation do not contradict the ALJ's findings. Based on the record, there is substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not cause any limitation in this domain.

      2.      <u>Interacting and Relating with Others</u>

Second, there is substantial evidence for the ALJ's conclusion that plaintiff has no limitations in his ability to interact and relate with others. This domain considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). At plaintiff's age, despite being dependent on caregivers, a child should begin to separate from them. The child should be able to express emotions and respond to the feelings of others, to initiate and maintain interactions with adults, and show interest in, then play alongside, and eventually interact with other children of the same age and be able to spontaneously communicate wishes and needs, first by using gestures and eventually by using words. 20 C.F.R. § 416.926a(i)(2)(ii).

Plaintiff argues that he is marked in this domain because Classroom Teacher Jane Shumway found on an Individualized Family Service Evaluation form that plaintiff, at twenty-three months old, was "delayed" in the areas of Communication-Expressive, Communication-Receptive, and Social/Emotional. (Dkt. # 17 at 14, Dkt. # 21 at 5; A.R. 15-17). However, Ms. Shumway's

opinions were provided on a simple fill-in-the-blanks form, and were not supported by objective findings or explanation demonstrating that plaintiff's physical impairments resulted in "marked" functional limitations in his ability to interact and relate to others. Under Communication-Expressive, Ms. Shumway notes that plaintiff "uses few consonant sounds. He has a vocabulary of at least one word. [X.J.] initiates a game or social routine and varies the sounds produces in syllable strings." (A.R. 16). Under Communication-Receptive, Ms. Shumway reports that plaintiff "maintains attention for two minutes. He follows simple directions with cues, such as 'Give me the keys'. [X.T.] receptively identifies familiar objects (ball). He also is able to follow simple directions without gestural cuing, such as 'Put the block in the box'." *Id.* Ms. Shumway also reports under Social/Emotional that plaintiff "has temper tantrums when frustrated. He insists on trying to do a variety of things without help. [X.T.] plays well with for a brief period of time in groups of two or three children. He separates from his parents in familiar surroundings without crying." *Id.*

Furthermore, Ms. Shumway's opinions are inconsistent with other evidence in the record that plaintiff "enjoy[s] social interaction with other kids and has a few kids his age in the apartment complex with whom he likes to play with." (A.R. 298). As discussed above, Dr. Stobbe reported that plaintiff tested negative for autism, finding that plaintiff's "eye contact, joint attention, and seeking out social interaction is all good." (A.R. at 299). Although there is evidence that plaintiff has delayed speech development, Dr. Hunter testified that he is only "a little below average." (A.R. 324). In sum, there is substantial evidence to support the ALJ's conclusion that plaintiff had no limitation in this domain.

/ / /

### 3. Caring for Yourself

Third, there is substantial evidence for the ALJ's conclusion that plaintiff has no limitations in his ability to care for himself.  In this domain, the ALJ should consider how well the plaintiff maintains a healthy emotional and physical state, including how well plaintiff gets his physical and emotional wants and needs met in appropriate ways, how he copes with stress and changes in his environment, and whether he takes care of his own health, possessions, and living area.  20 C.F.R. § 416.926a(k).  Children plaintiff's age should be trying to do more things for themselves that increase their sense of independence and competence in their environment.  They might console themselves by carrying a favorite blanket.  They should learn to cooperate with caregivers when taking care of physical needs, but also want to show what they can do;  *e.g.*, pointing to the bathroom, pulling off coat.  The child should be experimenting with his independence by showing some degree of contrariness (*e.g.*, "no, no") and identity (*e.g.*, hoarding his toys).  20 C.F.R. § 416.926a(k)(2)(ii).

Plaintiff argues he is marked in this domain because plaintiff's mother "opined that [he] will bite himself, bang his head on the ground, slap himself, and pull his hair and eyelashes." (Dkt. #17 at 18-19).  Plaintiff's mother also reports that he is unable to sleep through the night. (Dkt. #17 at 19).  Plaintiff relies on the evaluation of Ms. Shumway, finding that plaintiff was "delayed" in the areas of "Adaptive" and "Cognitive."  Again, Ms. Shumway's opinions were provided on a simple fill-in-the-blanks form, and were not supported by objective findings or explanation demonstrating that plaintiff's physical impairments resulted in "marked" functional limitations in his ability to care for himself.  Under Adaptive, Ms. Shumway's evaluation notes that plaintiff "chews textured foods. He willingly allows his caregiver to wipe his nose. [X.T.] brushes his teeth

with assistance. He also sips liquid from a glass or cup using a straw." (A.R. at 15). Under "Cognitive," Ms. Shumway reports that plaintiff "demonstrates the use of everyday items. For example, he pretends to drink from a cup. [X.T.] places a small object into a small container and rolls wheeled toys. He manages 3 to 4 toys by setting one aside when given a new toy." (A.R. 15-16).

Relying on the testimony of medical expert Dr. Hunter, the ALJ concluded that plaintiff's impairments imposed no limitation in this domain. (A.R. 27, 323-25). The ALJ indicated that he examined all of the relevant information in the record, but found no evidence supporting plaintiff's assertion that his allergies, reflux, and seizures caused marked impairment in his ability to care for himself. *See* 20 C.F.R. § 416.926a(d) (limitations must result from a medically determinable impairment). Dr. Hunter testified that in the domain of caring for himself "[y]ou don't expect at his age that he would be doing much of that anyway. There would be no limitation comparatively." (A.R. 325). Furthermore, no professional who evaluated plaintiff indicated that he could not meet his personal needs in an age appropriate manner, or stated that plaintiff's health problems affected his functioning in his ability to care for himself. Other evidence in the record also supports the ALJ's determination that plaintiff does not suffer from an impairment in this domain. (A.R. at 227)(Plaintiff is "alert and playful, appears quite happy. . . . fussiness is "within normal behavior for the patient"); (A.R. at 228)(Plaintiff is "playful and in no acute distress. . . . His development is normal for his age."); (A.R. at 280)(plaintiff is "alert, active and having age-appropriate behavior."); (A.R. at 285)(plaintiff played with toys). Finally, contrary to plaintiff's contention, the record indicates that plaintiff "has no sleep problems." (A.R. at 298). Based on the record as a whole, there is substantial evidence supporting the ALJ's conclusion that plaintiff's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

impairments were not the cause of any limitation in this domain.

### 4. Health and Physical Well-Being

Finally, there is substantial evidence for the ALJ's conclusion that plaintiff had less than marked limitations in the domain of health and physical well-being. In this domain, the ALJ considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's ability to function that were not considered under the domain for "moving about and manipulating objects." 20 C.F.R. § 416.926a(l).

As discussed above in Section A, having properly discounted the opinions of Dr. Tattoni, the evidence shows that plaintiff's allergies and gastric reflux are moderate and largely controlled with medication. (A.R. 281-87, 307-08, 313-14, 319). Additionally, his gastric reflux condition has been improving. (A.R. 319). Furthermore, plaintiff's treating physicians relate his history of body jerking to his gastric reflux condition, not seizures. (A.R. 195, 198, 171). Although plaintiff contends that he suffers from a metabolic disorder, the medical evidence refutes this assertion. (A.R. 200, 277-78, 297). Accordingly, the Court finds substantial evidence supports the ALJ's finding that plaintiff's limitations in the health and physical well-being domain are "less than marked."

The Court also disagrees with plaintiff's assertion that the ALJ failed to consider the combined effects of his impairments as required. In explaining his evaluation, the ALJ specifically stated that he assessed plaintiff's "functional limitations resulting from all of his impairments, including their interactive and cumulative effects." (A.R. at 23). Further, the ALJ stated that he considered all relevant information in the case record, including how plaintiff's functioning compares to that of unimpaired children of the same age, as required by regulation. *Id.* Although

a fuller discussion of the record facts would have been desirable, the Court finds that the decision of the ALJ's is properly supported by substantial evidence. Accordingly, the ALJ's decision should be affirmed.

### VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision should be affirmed. A proposed order accompanies this Report and Recommendation.

DATED this <u>18th</u> day of <u>October</u>, 2005.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17